**PHILADELPHIA INDEMNITY INSURANCE COMPANY,**
Appellant

v.

**FEDERAL INSURANCE COMPANY; Chubb Group of Insurance Companies; The Chubb Corporation.**

No. 04–2667.

United States Court of Appeals, Third Circuit.

Submitted pursuant to LAR 34.1(a) June 29, 2005.

Decided July 27, 2005.

420

Diana L. Moro, Mark J. Hill, Mark J. Hill & Associates, Philadelphia, PA, for Appellant.

Edward B. Mullen, III, Stacey L. McGraw, Wallace A. Christensen, Ross, Dixon & Bell, Washington, DC, for Appellee.

Before NYGAARD, SMITH, and FISHER, Circuit Judges.

## OPINION OF THE COURT

SMITH, Circuit Judge.

Philadelphia Indemnity Insurance Company ("PII") appeals the District Court's grant of summary judgment in favor of defendant Federal Insurance Company ("Federal") and its corporate parent. Because we write only for the parties, we restrict our discussion to the facts and legal principles necessary to resolve this appeal.

PII is an insurance company that was reinsured by Federal. The Federal–PII insurance policy ("the Policy") contained a provision requiring PII to provide notice to Federal in connection with claims against PII that could trigger liability on the part of Federal under the Policy.[1] Compliance with this notice provision was explicitly delineated as a "condition precedent" to PII's exercise of its rights under the Policy. The District Court granted summary judgment in favor of Federal, holding that Federal had permissibly refused to pay a claim submitted by PII, on the ground that PII had failed to comply with the condition precedent established by the applicable notice provision. We will affirm the judgment of the District Court.

The notice provision at issue in this appeal states:

> The Insured(s) [PII] shall, as a condition precedent to exercising their rights under this Policy, give to the Company [Federal] written notice as soon as practicable ... of any Claim made against [PII] for a Wrongful Act, of which the Insured's [PII's] General Counsel or equivalent officer first becomes aware of such Claim.

PII does not dispute that one of its policyholders filed a lawsuit against PII on January 24, 2001, and that this lawsuit contained a "Claim" for a "Wrongful Act," as those terms are defined in the Policy. PII also acknowledges that its Vice–President of Claims, William Benecke, received a copy of the complaint shortly after it was filed.

---

1. The parties agree that the Policy is governed by Pennsylvania law.

PII does not have a general counsel, but it concedes that Benecke was an "equivalent officer" who bore responsibility for notifying Federal of claims against PII pursuant to the Policy notice provision quoted above. Benecke did not read the complaint, however, and instead forwarded it to an in-house PII attorney, who proceeded with the aid of outside counsel to litigate the case over a sixteen month period. During this period, no notice was provided to Federal concerning the claim against PII. During this period, PII rejected an offer by the policyholder plaintiffs to settle the case for $600,000, an offer of which Federal was never informed.

The litigation arising from the claim against PII resulted in a decision by the policyholder plaintiffs to depose Benecke. Despite having received the complaint in January 2001, Benecke did not read it in the ensuing months, and he apparently did not review it even after being informed he was to be deposed. Benecke eventually wrote to Federal concerning the claim after having what PII's counsel describes as a " 'light bulb' moment" during his May 7, 2002 deposition preparation. Written notice was provided by PII to Federal on May 13, 2002, approximately sixteen months after the filing of the complaint containing claims subject to the Policy's notice provision.

The policyholders' lawsuit against PII was later settled for $1.6 million. Federal declined to cover the settlement costs under the Policy, arguing that PII failed to satisfy the Policy's condition precedent because it did not timely notify Federal of the existence of the claim. PII sued, and argues that Benecke's failure to read the complaint means that Benecke was not initially "aware" of a claim against PII for a "Wrongful Act," and that PII's notification obligation under the Policy was not triggered until Benecke obtained such awareness in May 2002.

■ The District Court properly rejected PII's argument, noting that Benecke and two other PII "equivalent officers" had received the complaint well before May 2002, but had apparently failed to make even a cursory examination of its contents. PII's notification obligation under the Policy is triggered by awareness on the part of particular PII officials of a claim alleging a "Wrongful Act" by PII. This implies a corresponding obligation of such officials, when provided with a complaint, to make good faith inquiries concerning whether the allegations contained therein include such a claim. Such an obligation could be easily satisfied by scanning the complaint to ascertain whether it contains allegations of a "Wrongful Act," which is broadly defined in the Policy as "any error, misstatement, misleading statement, act, omission, neglect or breach of duty" committed by PII or its employees in connection with insurance coverage or financial services provided by PII.

It is difficult to imagine a complaint by a PII policyholder (other than perhaps a declaratory judgment action) that would *not* incorporate a "Claim made against [PII] for a Wrongful Act." Thus, it is apparent that the mere receipt by PII of a complaint filed by PII policyholders places PII on notice that there is a high likelihood PII is facing a claim that triggers its notification obligations under the Policy. To say that PII's officers can ignore this underlying reality and avoid their notification obligations by simply refusing to read the complaint would, as the District Court observed, countenance an "ostrich farm defense" that seems inconsistent with any reasonable construction of the Policy. *See Comm. Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.,* 822 F.2d 267, 272 (2d Cir.1987) (test for determining whether in-

surance policy's notice provision has been triggered is whether the circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim).

█ Of course, PII is within its rights to adopt internal procedures that call for subordinate employees to review complaints in the first instance. However, to the extent such employees fail properly to fulfill their duties by failing to apprise an appropriate PII officer of a claim covered by the Policy's notification provision, the burden of such failure must be borne by PII, and not, as PII would have it, by Federal. *See, e.g., Travelers Cas. & Sur. Co. v. Castegnaro,* 565 Pa. 246, 772 A.2d 456, 460 (2001) (imputing responsibility for acts of insurance agent to insurance company where agent acted within scope of his duties); *St. Louis Fire & Marine Ins. Co. v. Witney,* 96 F.Supp. 555, 561 (M.D.Pa.1951) ("[n]otice to the agent, when it is the duty of the agent to act upon such notice, or communicate to his principal in the proper discharge of his duty as an agent, is notice to the principal, and applies to the agents of corporations as well as of others").

We have considered PII's other arguments in addition to those discussed above, and find them to be without merit. The judgment of the District Court is affirmed.